UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOUSSAM ELACHKAR,<br><br>                              Plaintiff,<br><br>          -against-<br><br>CITY OF NEW YORK, NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, MARIARIT ACQUISTA, Individually, JEAN LORMESTIL, Individually, and JOHN DOE 1 through 4, Individually, (the names John Doe being fictitious, as the true names are presently unknown),<br><br>                              Defendants. | **AMENDED COMPLAINT**<br><br>No. 19-CV-2172 (CBA)(ST)<br><br>JURY TRIAL DEMANDED |

Plaintiff HOUSSAM ELACHKAR, by his attorney, Bromberg Law Office, P.C., complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees under 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the United States Constitution.

## JURISDICTION

2.     Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.      This Court has jurisdiction to hear all claims in this matter under 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury on all issues in this matter under Federal Rule of Civil Procedure 38(b).

## PARTIES

6.      Plaintiff HOUSSAM ELACHKAR is a forty-five (45) year old male and United States Citizen who resided in Queens, New York, at all times hereinafter mentioned, and currently resides in Queens, New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9.      Defendant METROPOLITAN TRANSPORTATION AUTJJORITY ("MTA") is a New York State chartered public-benefit corporation, established in 1967 under New York State Public Authorities Law 1266-h. Its headquarters are

2

located at 347 Madison Avenue, New York, NY. The MTA is empowered by the Public Authorities Law 1266·h to maintain a Police Department which is acts as its agent in the areas of security and law enforcement and for which it is ultimately responsible. In 1988 the Police Departments of the Long Island Railroad and Metro-North Railroad merged to become the MTA Police Department. The MTA Police Department provides full police services throughout the three regions of the MTA system.

10.     Defendant NEW YORK CITY TRANSIT AUTHORITY is a public authority in the U.S. state of New York that operates public transportation in New York City, and is part of the Metropolitan Transportation Authority.

11.     At all times hereinafter mentioned, the individually named defendant, MARIARIT ACQUISTA (Badge No. 14450; Command No. 871), was a duly sworn police officer and was acting under the supervision of the NYPD, according to her official duties.

12.     At all times hereinafter mentioned, another individually named defendant, JEAN LORMESTIL (Transit District No. 34; Shield No. 18354), was a duly sworn police officer and was acting under the supervision of the NYPD, according to his official duties.

13.     At all times hereinafter mentioned, the individually named defendants, JOHN DOE 1 through 4 (Shield Nos. unknown), were duly sworn police officers of the NYPD, and were acting with Defendant MARIARIT ACQUISTA and Defendant JEAN LORMESTIL, and according to their official duties.

3

14.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

15.     Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

### FACTS

16.     Plaintiff HOUSSAM ELACHKAR ("Mr. Elachkar") is a resident of Queens, New York.

17.     On January 19, 2018, at approximately 3:30 p.m., Mr. Elachkar was returning from a dentist's appointment in Brooklyn.

18.     He was at the New York City Transit Authority's Brighton Beach Station, on the Manhattan-bound elevated platform.

19.     Defendants MARIARIT ACQUISTA and JEAN LORMESTIL, approached Mr. Elachkar and falsely accused him of having entered the station and the platform without having paid his fare.

20.     As the two police officers, ACQUISTA and LORMESTIL, and Mr. Elachkar were standing at a dangerous location, close to the edge of the elevated platform, they ordered Mr. Elachkar to turn around.

21.     Mr. Elachkar believed the officers intended to place him in handcuffs and arrest him.

4

22.     When Mr. Elachkar turned around, with his back to the police officers, one or both police officers pushed him from behind, without warning to the elevated train tracks.

23.     The police officers pushed Mr. Elachkar onto the tracks either negligently or intentionally.

24.     Surprised, Mr. Elachkar fell through the elevated tracks and plunged to the street below.

25.     There were no protective barriers or netting to prevent Mr. Elachkar from falling through the subway trestles.

26.     Someone falling to the tracks was entirely foreseeable, even if the particular manner of Mr. Elachkar's fall – *i.e.*, being pushed from behind by a police officer – was not foreseen by Defendants.

27.     Defendants were negligent in failing to place sufficient barriers and/or netting to prevent Plaintiff from falling through the train trestles to the street far below.

28.     After he landed on the street below and was writhing in pain, unable to move, Police Officer JEAN LORMESTIL caused additional injury to Mr. Elachkar by coming down to the street, forcing Mr. Elachkar's arms and hands behind his back, and handcuffing him behind his back, notwithstanding that he was now visibly disabled, screaming in pain, unable to move, and did not constitute any threat.  This excessive physical force and restraint caused additional pain and injury to Mr. Elachkar.

29.     Defendants placed Mr. Elachkar inside of an ambulance that transported him to the Emergency Room at Lutheran Hospital.

30.     Mr.  Elachkar was handcuffed to the hospital bed in which he was being treated for the injuries that the defendants inflicted upon him.

31.     As a result of Defendants assaulting him and the resulting fall and handcuffing, Mr. Elachkar suffered severe injuries, including but not limited to, bilateral leg fractures that required surgery, bilateral foot fractures that required surgery, psychological and emotional distress injuries, lost earnings, health care expenses, substantial past and future pain and suffering, persistent discomfort, loss of property lost or stolen by Defendants, and further physical and psychological injuries yet to be revealed.

32.     Mr. Elachkar was then taken to Lutheran Hospital in an ambulance, where he began the first of many surgeries and extensive and lengthy rehabilitation.

33.     To this day, Mr. Elachkar is in substantial pain and must use a walker as a result of the assault upon him by Defendants.

34.     Mr. Elachkar was then charged with "fare evasion" and forced to plead to a charge of disorderly conduct in order to stop the criminal proceedings.

35.     These charges were filed based upon the false allegations of Defendants ACQUISTA, LORMESTIL, and Does.

36.     Defendants ACQUISTA, LORMESTIL, and Does manufactured the underlying false allegations and forwarded this information to the District

6

Attorney's Office knowing that it would be used against Mr. Elachkar at trial.

37.     Defendants falsely claimed, among other false allegations, that Mr. Elachkar tried to evade paying his subway fare.

38.     Defendants arrested and initiated criminal proceedings against Mr. Elachkar despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

39.     Defendants initiated this prosecution for the purpose of covering up their unlawful and unjustified assault upon Mr. Elachkar.

40.     Elachkar never appeared in Kings County Crim court.  He pled guilty at his hospital bed to the violation of disorderly conduct, and all criminal charges were dismissed.  The initial charges were:

a.      Theft of services;

b.      Criminal possession of stolen property in the fifth degree;

c.      Obstructing governmental administration in the second degree;

d.      Resisting arrest;

e.      Criminal trespass in the third degree;

f.      Trespass; and

g.      Disorderly conduct.

41.     These charges were filed by Defendants in an apparent attempt to cover up the criminal nature of their actions and to cover up their liability.

42.     All of the events leading up to and culminating in Mr. Elachkar being subjected to excessive force, false arrest, and denial of fair trial rights occurred

7

while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

43.     All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, the NEW YORK CITY TRANSIT AUTHORITY, and the METROPOLITAN TRANPORTATION AUTHOIRTY, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

44.     The underlying application of excessive force, false arrest, and denial of the right to fair trial is not an isolated incident.  Defendant CITY OF NEW YORK, NYCTA, and MTA are aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.

45.     Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging

8

victimized citizens with Assault in the Second Degree.  *See, e.g., Graham v. City of New York*, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); *Rodriquez v. City of New York*, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); *Tucker v. City of New York*, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); *Williams v. City of New York*, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); *Stroe v. City of New York*, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). *See also* Ashley Southall & Marc Santora, *Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case*, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . .  The [NYPD] has banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board.  From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, *NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground*, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-

stomping

-man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday

after allegedly stomping on a suspect's head, authorities said.  NYPD Officer Joel

Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on

Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted

the man as he lay on the ground, officials said."); Robert Gearty, *Bronx man suing

NYPD for excessive force for a rough arrest captured on cell phone video*, N.Y. DAILY

NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-

suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-

1.1156308 (A Bronx man sued the City of New York and the individual NYPD

officers for excessive force: "The video lasts about one minute and appears to show

then 19-year-old Luis Solivan being pummeled in the face several times by one

officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into

his home for no reason, pepper-sprayed him and beat him with their hands and a

walkie-talkie.  Solivan's mother and two younger brothers were in the University

Avenue apartment at the time.  After Solivan was hand-cuffed, he was kicked and

his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel

Beekman, *Man wins $2.5 million in lawsuit against NYPD cops over using excessive

force*, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-

wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and

the individual NYPD officers and the jury awarded him $2,500.000.00 in damages

at trial because an NYPD officer "threw him down and kicked him in the knee,"

causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, *Lawyer for drug suspect who was beaten by cops demands special prosecutor*, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

46.     Defendants CITY OF NEW YORK, NYCTA, and MTA are further aware that such conduct and improper training has often resulted in deprivations of civil rights.  Despite such notice, Defendants CITY OF NEW YORK, NYCTA, and MTA have failed to take corrective action.  This failure caused the defendants to violate Mr. Elachkar's civil rights.

47.     Moreover, upon information and belief, Defendants CITY OF NEW YORK, NYCTA, and MTA were aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and

disposition to be employed as police officers.  Despite such notice, Defendants CITY

OF NEW YORK, NYCTA, and MTA have retained these officers and failed to

adequately train, supervise, and discipline them.

48.     As a result of the foregoing, Plaintiff HOUSSAM ELACHKAR, has

sustained, among other damages, physical injuries, substantial pain, mental

injuries, emotional distress, embarrassment, and deprivation of his constitutional

rights and liberty.

49.     That pursuant to statutory requirements, plaintiff caused to be served

within 90 days after the January 19, 2018 arrest, a Verified Notice of Claim upon

defendants, and pursuant thereto, defendant City of New York conducted a

municipal hearing on November 13, 2018, and defendant New York City Transit

Authority conducted a hearing on February 28, 2019, and as a result thereof, all

condition precedents have been complied with.

## FIRST CLAIM FOR RELIEF
### *False Arrest*

50.     Plaintiff realleges and incorporate herein the allegations above.

51.     Defendants intentionally subjected plaintiff to confinement, depriving

plaintiff of his liberty and his right to move about freely.

52.     Plaintiff was conscious of the confinement.

53.     Plaintiff did not consent to the confinement.

54.     The confinement was not privileged in that plaintiff never committed

any crime and, moreover, Defendants did not have knowledge of facts or

circumstances sufficient to support a reasonable belief that plaintiff had committed any other crime.

55. Defendants are therefore liable to plaintiff under the laws of New York Stat and the New York State Constitution.

56. Moreover, as a result of Defendants' false arrest of Plaintiff, Plaintiff was deprived of his right to be free from unreasonable seizures under the Fourth Amendment. Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the New York State Constitution.

57. As a result of the false imprisonment, plaintiff was damaged.

## SECOND CLAIM FOR RELIEF
### *Assault and Battery; Violation of 28 U.S.C. § 1983*

58. Plaintiff realleges and incorporates herein the allegations above.

59. Defendants, without just cause, willfully and maliciously touched Plaintiff without his authorization and used physical force on Plaintiff, causing plaintiff to suffer physical and emotional injuries.

60. That as a result of the foregoing, Plaintiff was intentionally placed in fear and fright of imminent physical harm.

61. That as the result of the foregoing, Plaintiff was the object of assault and battery.

62. Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard Plaintiff's rights and is therefore liable for punitive damages.

13

63.     Plaintiff has been damaged as a result of these acts of the Defendants.

64.     As a result of Defendants' assault and battery of Plaintiff, Plaintiff was deprived of his right to be free from unreasonable seizures and free from deprivation of life, liberty, and property under the Fourth and Fourteenth Amendments. Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the New York State Constitution.

## THIRD CLAIM FOR RELIEF
### *Excessive Force*

65.     Plaintiff realleges and incorporates herein the allegations above.

66.     Defendants needlessly pushed plaintiff off the train platform causing serious and permanent injury, and then handcuffed him behind his back while he lay on the ground unable to move, causing additional pain and injury.

67.     Defendants' use of physical force against Plaintiff was unnecessary, wanton, excessive, and was not applied in good-faith pursuit of Defendants' law-enforcement duties.

68.     As a result of Defendants' use of excessive force against Plaintiff, Plaintiff was deprived of his right to be free from unreasonable seizures under the Fourth Amendment. Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the New York State Constitution.

## FOURTH CLAIM FOR RELIEF
### *Respondeat Superior*

69.     Plaintiff realleges and incorporates herein the allegations above.

14

70.     At the time of the above incident described above, the individual police officer defendants, including the John Does, were employees, agents and/or servants of Defendant CITY OF NEW YORK.

71.     The defendant police officers, including the John Does, were at all times relevant to the incident described above acting within the scope of their employment, in that they performed the actions described above for the purposes of furthering Defendant CITY OF NEW YORK'S interests in promoting safety and apprehending criminals.

72.     As such, Defendant CITY OF NEW YORK is responsible for the conduct of the defendant police officers, including the John Does, under the doctrine of *respondeat superior* due to the master-servant relationship that existed at the time of the incident described above.

## FIFTH CLAIM FOR RELIEF
### *Negligent Hiring, Training, and Retention*

73.     Plaintiff realleges and incorporates herein the allegations above.

74.     Even if the defendants police officers, including the John Does, were not acting within the scope of their employment, Defendant CITY OF NEW YORK was negligent in that:

(a)  Defendant CITY OF NEW YORK negligently hired the defendant police officers, including the John Does, despite knowing that they would probably harm or detain citizens without probable cause;

(b)  Defendant CITY OF NEW YORK failed to screen, or adequately screen, the defendant police officers, including the John Does;

(c)  Defendant CITY OF NEW YORK failed to train or adequately train, the defendant police officers, including the John Does;

15

(d)   Defendant CITY OF NEW YORK failed to supervise or adequately supervise the defendant police officers, including the John Does;

(e)   Defendant CITY OF NEW YORK negligently retained the defendant police officers, including the John Does, even though it knew, or should have known, that they posed a danger to innocent citizens.

## SIXTH CAUSE OF ACTION
### *Municipal Liability*

75.   Plaintiff realleges and incorporates herein the allegations above:

76.   Under *Monell v. Dept. of Soc. Servs.* 436 U.S. 658 (1978), Defendant CITY OF NEW YORK is liable for the violations of Plaintiff's Fourth Amendment rights committed by Defendants ACQUISTA, LORMESTIL, and Does.

77.   On information and belief, the CITY OF NEW YORK carefully compiles and maintains statistics on the number of complaints filed by citizens complaining of false arrest and brutal treatment at the hands of Officers of the NEW YORK CITY POLICE DEPARTMENT.

78.   On information and belief, the statistics compiled and maintained by the CITY OF NEW YORK track complaints both by the particular Officers involved as well as by geographic area.

79.   On information and belief, the statistics compiled and maintained by the CITY OF NEW YORK demonstrate, not only that false arrest and excessive force at the hands of NEW YORK CITY POLICE DEPARTMENT officers are rampant problems across New York City generally.

80.     Because of the numerous complaints and civil rights lawsuits filed by citizens of New York City against Officers of the NEW YORK CITY POLICE DEPARTMENT, Defendant CITY OF NEW YORK, in January 2018, knew or should have known of their employees', agents', or servants' propensity to engage in excessive force and false arrest that violated innocent citizens' rights to be free from unreasonable seizures under the Fourth Amendment.

81.     Nevertheless, despite this knowledge, the managers and other officials tasked with making policy for the CITY OF NEW YORK were deliberately indifferent to the patterns of excessive force and false arrest, particularly as they targeted younger men of color. This deliberate indifference manifested itself in a failure to discipline Officers who engaged in those activities and continuing to train Officers to use methods and procedures that make these unreasonable seizures more likely.

82.     Plaintiff was damaged by the culture of recklessness that Defendant CITY OF NEW YORK both allowed and perpetuated, and by CITY OF NEW YORK'S deliberate indifference to the substantial risk of bodily harm to innocent citizens.

(a) .

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Deprivation of Rights Under 42 U.S.C. § 1983)

83.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set

forth herein.

84.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

85.     All of these aforementioned acts deprived Plaintiff HOUSSAM ELACHKAR of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

86.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

87.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK, the NYCTA, the MTA, and the NYPD, all under the supervision of ranking officers of the NYPD, the NYCTA, and the MTA.

88.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

89.     As a result, Plaintiff HOUSSAM ELACHKAR is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a

18

jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

90.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

91.    The defendants arrested Plaintiff HOUSSAM ELACHKAR without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

92.    The defendants caused Plaintiff HOUSSAM ELACHKAR to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, and deprived of his liberty.

93.    As a result, Plaintiff HOUSSAM ELACHKAR is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
### (Excessive Force under 42 U.S.C. § 1983)

94.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

95.    The defendants employed force against Plaintiff HOUSSAM ELACHKAR that was excessive, objectively unreasonable, and in a clear violation of

19

Plaintiff's constitutional rights.

96.     At no time did Plaintiff HOUSSAM ELACHKAR pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

97.     As a result of Defendants' conduct, Mr. Elachkar suffered severe injuries, including but not limited to, bilateral leg fractures that required surgery, bilateral foot fractures that required surgery, psychological and emotional distress injuries, lost earnings, health care expenses, substantial past and future pain and suffering, persistent discomfort, loss of property lost or stolen by Defendants, and further physical and psychological injuries yet to be revealed.

98.     As a result, Plaintiff HOUSSAM ELACHKAR is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A NINTH CLAIM FOR RELIEF
### (Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

99.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

100.    The defendants falsified the information against Plaintiff HOUSSAM ELACHKAR likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of

Plaintiff.

101.    The defendants caused Plaintiff HOUSSAM ELACHKAR to be
prosecuted upon the false information that they submitted to the District Attorney's
Office until Mr. Elachkar was forced to plead to disorderly conduct.

102.    As a result, Plaintiff HOUSSAM ELACHKAR is entitled to
compensatory damages in amount to be fixed by a jury and is further entitled to
punitive damages against the individual defendants in an amount to be fixed by a
jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A TENTH CLAIM FOR RELIEF
(Failure to Intervene under 42 U.S.C. § 1983)

103.    Plaintiff repeats, reiterates, and realleges each and every allegation
contained in the foregoing paragraphs with the same force and effect as if fully set
forth herein.

104.    The defendants had an affirmative duty to intervene on behalf of
Plaintiff HOUSSAM ELACHKAR, whose constitutional rights were being violated
in their presence by other officers, including the individual defendants.

105.    The defendants failed to intervene to prevent the unlawful conduct
described herein despite having every opportunity to do so.

106.    As a result of the defendants' conduct, Plaintiff HOUSSAM
ELACHKAR was subjected to excessive force; false arrest; denial of his right to a
fair trial; his liberty was restricted for an extended period of time; he was put in
fear for his safety; he was physically brutalized and in pain; and he was subjected to

handcuffing; physical restraints; and ultimately an extended period of imprisonment.

107.   As a result, Plaintiff HOUSSAM ELACHKAR is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

108.   All of the foregoing acts of the defendants deprived Plaintiff HOUSSAM ELACHKAR of federally protected rights, including, but not limited to, the right:

      A.     To be free from deprivation of civil rights and liberty;

      B.     To be free from false arrest/unlawful imprisonment;

      C.     To be from excessive force;

      D.     To be free from denial of the right to a fair trial; and

      E.     To be free from the failure to intervene.

109.   As a result, Plaintiff HOUSSAM ELACHKAR is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF
### (Negligence)

110.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set

forth herein.

111.    As a result of, *inter alia*, Defendants' failure to ensure there was protective devices, plating and/or netting to prevent an entirely foreseeable deadly and/or life-threatening fall to the ground from the elevated train tracks, and defendants' use of excessive physical force in attempting to arrest and handcuff Mr. Elachkar at the dangerous edge of an elevated subway platform for the alleged minor, non-violent incident of fare evasion involving, approximately, $2.50, and back-handcuffing Mr Elachkar on the street below when he was visibly disabled and not a threat, Plaintiff HOUSSAM ELACHKAR was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

112.    As a result of Defendants' conduct, Mr. Elachkar suffered severe injuries, including but not limited to, bilateral leg fractures that required surgery, bilateral foot fractures that required surgery, psychological and emotional distress injuries, lost earnings, health care expenses, substantial past and future pain and suffering, persistent discomfort, loss of property lost or stolen by Defendants, and further physical and psychological injuries yet to be revealed.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF
(Cruel and Inhuman Punishment under the New York and U.S. Constitutions)

113.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

114.     Defendants' pushing of Plaintiff from the train platform and handcuffing of Plaintiff behind his back while he lay immobile and in severe and substantial pain constituted actions that by their severity were degrading to human dignity.

115.     The severe punishment that was obviously inflicted in wholly arbitrary fashion.

116.     The severe punishment inflicted by Defendants is clearly and totally rejected throughout society.

117.     The severe punishment inflicted by Defendants was patently unnecessary.

118.     The above actions constituted cruel and inhuman punishment under the New York and U.S. Constitutions.

119.     As a result of Defendants' cruel and inhuman punishment, Mr. Elachkar suffered severe injuries, including but not limited to, bilateral leg fractures that required surgery, bilateral foot fractures that required surgery, psychological and emotional distress injuries, lost earnings, health care expenses, substantial past and future pain and suffering, persistent discomfort, loss of property lost or stolen by Defendants, and further physical and psychological injuries yet to be revealed.

24

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff HOUSSAM ELACHKAR demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individual defendants in an amount to be determined by a jury;

(C)     reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as the Court deems just and proper.


**Dated:**          New York, New York
                    July 10, 2019

                              Respectfully submitted,

                              **BROMBERG LAW OFFICE, P.C.**
                              26 Broadway, 27th Floor
                              New York, New York 10004
                              Tel: (212) 248-7906
                              Fax: (212) 248-7908

                              By:      /s/ Brian L. Bromberg
                                       Brian L. Bromberg

                              Attorney for Plaintiff HOUSSAM
                              ELACHKAR